IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: ) | Case No. 04-00788-jw |
| ) | Chapter 11 |
| **SEA ISLAND COMPREHENSIVE** ) | |
| **HEALTH CARE CORPORATION** ) | |
| ) | |
| Debtor. ) | |

**PLAN OF REORGANIZATION BY DEBTOR IN POSSESSION**

The Debtor, proposes the following Plan of Reorganization pursuant to Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §1101, et seq. (the "Code").

**I.   DEFINITIONS:**

a. **ACCEPTANCE** - A specific class of claims has accepted the Plan when it has been approved by those voting individual creditors in that class that hold at least two-thirds (2/3) in amount ($'s) and more than one-half (1/2) in number (greater than 50% of the voting individual allowed claims of that class of creditors). A class of interests has accepted the Plan if it is approved by equity holders holding at least two-thirds (2/3 in amount of the allowed interests of such class held by equity holders of such interest (i.e., number of shares held by shareholders or partners) that have voted in confirmation of such Plan. It is important to note that computation in the confirmation voting process is based upon the total amount of claims actually voting, rather than on claims proven and allowed. Notwithstanding any other provision of this section, any class that is unimpaired under this Plan is deemed by law to have accepted this Plan, and solicitation of acceptances with respect to such class is not otherwise required.

b. **ADMINISTRATIVE EXPENSE CLAIM** - Any claim or expense arising or accruing on or after the filing date, which is entitled to priority under §503(b) and §507(a)(1) of the Code, including without limitation, all expenses of administration.

c. **ADVANCES** - Payments made other than by the Debtor directly to the Debtor or to another party which ultimately benefit the Debtor's operating status, including but not limited to payments under guarantees by an obligation primarily of the Debtor.

d. **ALLOWED AMOUNT** - The amount of a claim that has been allowed by a final order; or the amount of a claim timely filed with the Clerk of the Court or that is listed by the Debtor in its schedules filed with the Bankruptcy Court (as they may be amended or supplemented) as undisputed, non-contingent or liquidated, as to which claim (i) no objection to the allowance of which has been interposed within any period of limitation fixed by the Code, the Bankruptcy Rules or final order, or (ii) an objection has been interposed and the amount of the claim has been determined by a final order; or the amount of an administrative claim (i) as to which no objection has been interposed within any period of limitation fixed by the Court, applicable Bankruptcy Rules or final order, or (ii) as to which an objection has been interposed and the amount of the claim has been determined by a

final order, or (iii) with respect to fees and expenses of professional persons, the amount of such fees and expenses as allowed by a final order.

e. **ALLOWED CLAIM** - Each creditor's claim or claim of interest whose validity is accepted by the Debtor for payment or, if challenged by the Debtor, a claim which is ultimately proved by that claimant and approved by the Court after notice.

f. **THE CASE** - This proceeding under Chapter 11.

g. **CHAPTER 7** - A hypothetical case which is administered under 11 U.S.C. §701, et seq., whereby an estate, identical to that of the Debtor, has its assets liquidated.

h. **CHAPTER 11** - A case being administered under 11 U.S.C. §1101, et seq., for the reorganization of the indebtedness of the Debtor.

i. **CLAIM** - A right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

j. **CLASS** - One or more holders of claims or interests, which are substantially similar to one another, as classified pursuant to the Plan.

k. **CONFIRMATION DATE** - The date of entry of the confirmation order.

l. **CONFIRMATION OR CONFIRMATION ORDER** - The Order of the Bankruptcy Court confirming the Plan, after the Court has found that the Plan: (i) has been accepted by the requisite number of creditors and parties in interest eligible to vote; (ii) is feasible; (iii) is fair and equitable; (iv) does not unfairly discriminate; and (v) meets all of the other requirements of 11 U.S.C. § 1123, 1126, 1129.

m. **THE COURT** - United States Bankruptcy Court for the District of South Carolina.

n. **DISBURSING AGENT** - A person or other entity appointed by the Board of Directors of the Debtor. The Disbursing Agent will have the authority to delegate or assign his duties as Disbursing Agent to other persons or agencies as he deems appropriate with Board approval.

o. **EFFECTIVE DATE** - Thirty (30) business days after the date when the confirmation order becomes a final order.

p. **EXECUTORY CONTRACTS** - All contracts or agreements not completed and to be performed or satisfied in the future.

q. **FINAL CONSUMMATION** - That date and time at which the execution of all provisions of the Plan, appropriate requirements of the Court, and applicable supplemental orders issued by the Bankruptcy Court have been fully complied with and accomplished.

r.  **FINAL ORDER** - An order or judgment of the Bankruptcy Court which shall not have been reversed, stayed, modified or amended, and the time to appeal from or to seek review or rehearing of such order shall have expired.

s.  **INTERESTS** - The rights of the holders and owners of the issued and outstanding equity holdings in the Debtor.

t.  **IMPAIRED CLASS** - A class of claims given under this Plan less than the full amount of their filed and approved individual claim(s) where contract rights are modified or compromised by the Plan.

u.  **THE PLAN** - This Plan of Reorganization of the Debtor.

v.  **PRE-PETITION CLAIMS** - Any claim arising or accruing prior to the date of the filing of the Petition for Relief.

w.  **PRIORITY** - The priority in distribution afforded to certain claims pursuant to §507(a) of the Code.

x.  **SECURED CLAIM** - A claim completely or partially secured by real estate mortgages, security agreements, assignments, consignments, chattel mortgages, financing statements, liens or other legal encumbrance which is entitled to secured status under Title 36 of the Code of Laws of South Carolina (UCC provisions) or South Carolina law.

y.  **SUBSTANTIAL CONSUMMATION** - That date and time on which the transfer of all or substantially all of the property proposed by the Plan to be transferred has been achieved; the assumption by the Debtor under the Plan of the business or management of all or substantially all of the property dealt with by the Plan has been achieved; and the commencement of some payments under the Plan has begun.

z.  **UNSECURED CLAIM** - A claim other than secured claims, priority claims, administrative expense claims, or claims of interest.

aa. **UNIMPAIRED CLASS** - A class of claims whose rights are not affected by this Plan and which is entitled to and shall receive full satisfaction of its filed and approved claims as required by the Code. This Class is deemed to have accepted this Plan without voting.

II.  **CLASSES OF CREDITORS TREATED UNDER THE PLAN:**

  A.  **CLASSIFICATION.** The Creditors of the Estate are classified as follows:

**Class 1:**
**Administrative expense claims.** This Class includes Debtor's attorneys' fees (both primary and special counsel), consulting fees for approved consultant, if any remain unpaid, US Trustee fees (pending closure of this case), and any other allowed claims to be approved by the Court. The claims in this Class are for services provided during the pendency of this case, as well as for assisting the Debtor in complying with

this Plan and for later ordinary-course services post-confirmation and, potentially, post-closure of this case. Estimated fees for legal services and claims in this class are $200,000.00.

### Class 2:
**Priority pre-petition federal tax claims of governmental units pursuant to §507(a)(8) of the Code.** This class includes income and/or payroll tax liabilities due the Internal Revenue Service which is not included in the secured claim filed by this creditor. The Debtor estimates the amount of taxes due in this Class to be $7,861.44.

### Class 3:
**Priority pre-petition state tax claims of governmental units pursuant to §507(a)(8) of this Code.** This Class includes income and/or payroll tax liabilities due the South Carolina Department of Revenue. The Debtor estimates the amount of taxes due in this Class to be $239,679.68.

### Class 4:
**Unsecured pre-petition claims of individuals or corporations for wages, salaries or commissions earned within 90 days before the Case filing date or the date for the cessation of the Debtor's business, whichever occurred first, to the extent of $4,925.00 each.** This is a §507(a)(3) priority, which by definition includes "sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 per cent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor." Although there are numerous claims for priority treatment, only one claim qualifies under the provisions of the Code for treatment in this class. The Debtor estimates the amount of claims in this Class to be $1,701.29.

### Class 5:
**Unsecured pre-petition priority claim of S. C. Employment Security Commission.** This class includes a claim for non-payment of pre-petition employment fees or taxes. The amount of this claim is $169,664.83.

### Class 6:
**Secured tax claims - Federal.** This class includes claims of the Internal Revenue Service in the filed amount of $1,473,405.13. The Debtor, through special counsel, is seeking abatement of interest and penalties which amount to more than $600,000.00 of this claim.

### Class 7:
**Secured tax claims - State.** This class includes claims of the South Carolina Department of Revenue filed in the amount of $52,126.77.

### Class 8:
**Secured Mortgage Claims.** This class includes recorded consensual mortgages on real estate generally described as the Hermina Traeye Nursing Home and include the U. S. Department of Agriculture Rural Development Authority, Gulf Coast Bank & Trust Company and HMR (the entity that operates the Nursing Home, pays the mortgage obligations and pays the remaining funds due from the operating agreement to Sea Island. These obligations were current pre-petition and have remained current during the pendency of this case. The Debtor estimates the amount of these claims to be $2,695,661.19.

**Class 9:**
**Secured Mortgage Claim of William Pinder.** This Class includes the recorded mortgage of William Pinder, the former CEO and CFO of the Debtor. This claim is disputed and the subject of an Adversary Proceeding seeking to have the lien declared void *ab initio*. The note and mortgage which is the subject of the Adversary Proceeding is estimated to be $322,000.00.

**Class 10:**
**Judgment claims.** This class includes claims of creditors perfected by judgments entered pre-petition that are final judgments and encumber real property owned by the Debtor. These claims include the South Carolina Department of Health and Human Services, Charleston County User Fee, Morris D. Ashe, and Kathleen Grabowski. The Debtor estimates these claims to be $469,803.05.

**Class 11:**
**General unsecured creditors.** This Class is impaired. There are approximately 206 claim holders in this Class, with potential claims of approximately $2,662,993.28.

**B.     TREATMENT AND IMPAIRMENT.** The Plan provides the express treatment per Class, in the following particulars:

**Class 1 claims are unimpaired.** Each holder of a Class 1 claim shall be paid as funds are available from the sale of real property. A minimum of 10% of the proceeds from the sale of property under Phase I will be set aside as a "carve out" for claims in this class. Each claimant in this Class may agree to payment of its Claim in installments by agreement in the Debtor for any remaining amounts due. The payment of quarterly fees to the Office of the U.S. Trustee will continue after confirmation and until the case is closed by the Court. Any deferred claim payments shall accrue interest at the rate of 4.0% until paid in full.

**Class 2 claims are unimpaired.** Each holder of a Class 2 claim shall be paid the allowed amount of its claim in either in a lump sum payment upon the sale of the property as described herein, or in the discretion of the Debtor, deferred cash payments over a period not exceeding 6 years after the date of assessment of such claim, of a value, as of the effective date, equal to the allowed amount of such claim, pursuant to §1129(a)(9)(c) of the Code. Any deferred claim payments shall accrue interest at the rate of 4.0% until paid in full.

**Class 3 claims are unimpaired.** Each holder of a Class 3 claim shall be paid the allowed amount of its claim in either in a lump sum payment upon the sale of the property as described herein, or in the discretion of the Debtor, deferred case payments over a period not exceeding 6 years after the date of assessment of such claim, of a value, as of the effective date, equal to the allowed amount of such claim, pursuant to §1129(a)(9)(c) of the Code. Any deferred claim payments shall accrue interest at the rate of 4.0% until paid in full.

**Class 4 claims are unimpaired.** Each holder of a Class 4 claim shall be paid the allowed amount of its claim in either a lump sum payment upon the sale of the property described herein. This Class includes one (1) claim for wages, salaries or commissions earned within 90 days before the Case was filed. This claim will be paid in full upon the sale of the property as described herein.

**Class 5 claims are impaired.** The S. C. Employment Security Commission ("SCESC") holds a filed

claim in the amount of $169,664.83 for pre-petition employment fees or taxes. The Debtor, through Special Counsel is negotiating the amount of this claim with SCESC. The SCESC shall be paid the allowed amount of its claim in either in a lump sum payment upon the sale of the property under Phase I as described in the Plan, or in the discretion of the Debtor, deferred cash payments over a period not exceeding 6 years after the date of assessment of such claim, of a value, as of the effective date, equal to the allowed amount of such claim, pursuant to the applicable provisions of the Bankruptcy Code. Any deferred claim payments shall accrue interest at the rate of 5.0% until paid in full.

**Class 6 claims are impaired.** This class includes claims of the Internal Revenue Service in the filed amount of $1,473,405.13. The Debtor, through special counsel, is seeking an abatement of penalties and interest due on this claim and will seek to have the IRS reduce its claim and pay the full amount of the agreed or allowed claim from the proceeds of the sale contemplated in Phase I.

**Class 7 claims are impaired.** This class includes the secured claim of the South Carolina Department of Revenue filed in the amount of $52,126.77. This claim will be paid in the agreed amount from the proceeds received from the sale of the property described herein.

**Class 8 claims are unimpaired.** This class includes recorded consensual mortgages on real estate generally described as the Hermina Traeye Nursing Home and include the U. S. Department of Agriculture Rural Development Authority, Gulf Coast Bank & Trust Company and HMR. These obligations were current pre-petition and the Debtor has made payments under the terms of these Notes and Mortgages during the pendency of this case. The Debtor will continue to make payments to the holders of claims in this class. No distribution will be made to holders of claims in this class from the proceeds of the sale of the property described

**Class 9 claims are impaired.** There are no funds allocated to this Class from the proceeds of the sale of the real estate described herein. The holder of this claim will retain his alleged lien until such time as the Adversary Proceeding is concluded. Should the Adversary Proceeding outcome determine that the Debtor must provide for this claim, the holder will receive payment from the proceeds of the sale of real property as described herein or in monthly installments in the same manner as the holders of Class 10 claims.

**Class 10 claims are impaired.** This class includes claims of creditors perfected by judgments entered pre-petition that are final judgments and encumber real property owned by the Debtor. These claims include the South Carolina Department of Health and Human Services, Charleston County User Fee, Morris D. Ashe, and Kathleen Grabowski. These claims will be paid in full upon receipt of the proceeds from the sale of real estate described herein or, in the discretion of the Debtor, deferred cash payments over a period not exceeding 10 years after the date of assessment of such claim, of a value, as of the effective date, equal to the allowed amount of such claim. Should there be insufficient funds to pay the claims in full, these claims will be treated as unsecured and paid pursuant to the treatment provided in Class 11.

**Class 11 claims are impaired.** This Class is impaired. There are approximately 206 claim holders in this Class, with potential claims of approximately $2,662,993.28. These claims will be paid on a pro rata basis from the balance of the sales proceeds after payment to Classes 1-10. A lump sum payment from the Phase I reserve described in detail in the Plan will be made to holders of allowed claims in this Class

upon the sale contemplated under Phase I. In addition, other payments will commence sixty (60) days after the sale of the property contemplated under Phase II. It is the desire of the Debtor to pay these claims in full or, alternatively, pay as much of the allowed claims in this Class as possible based on the amount received from the sale of the real estate contemplated herein.

### C.    GENERAL AND MISCELLANEOUS PLAN PROVISIONS.

From and after confirmation of this Plan the Debtor, its officers, directors and employees, are exonerated and released from any and all claims. The Debtor will, from and after confirmation of the Plan, be indebted for and obligated to pay <u>only</u> those obligations and liabilities as set forth herein.

### III.    MEANS OF EFFECTUATING AND IMPLEMENTING THE PLAN:

The Plan is to be implemented consistent with §1123 of the Code. The Debtor shall continue in possession of all of the property of the estate, and shall continue to make all management decisions, subject to the terms and provisions of this Plan and the Order confirming this Plan.

All authority and powers necessary to implement the Plan are vested in the Debtor, unless otherwise provided for herein. Such powers shall include, but are not limited to, executing sales and listing agreements, deeds, contracts, bills of sale, releases, assignments, or any other document necessary to carry out the terms of the Plan.

The Plan will take effect on the "effective date," which is 30 days after the date the Bankruptcy Court's Order confirming the Plan has become final, in that the time to appeal or seek reconsideration of the Order has elapsed, and no appeals regarding the Order of Confirmation are pending or 30 days after closing on the sale of the real estate as contemplated by this Plan pursuant to the Order of the Court allowing for such sale and the consummation of the same, whichever occurs later. Completion of the specific actions called for in the Plan by necessity may occur after the effective date, but best efforts will be put forth by the Debtor to insure that consummation occurs as close to the effective date as is possible.

The Debtor shall market and sell real estate not currently in use by the Debtor or deemed necessary to the fulfillment of the Debtor's continued mission to the Sea Island community it serves. See Map Entitled "Sea Island Master Plan" attached as Exhibit "A" for detail regarding real property owned by the Debtor and subject to the sales proposed in the Plan. The Debtor expects to receive an offer to purchase three (3) tracts of property owned by it for a total sales price of $2,600,000.00 within thirty (30) to forty-five (45) days of the filing of the Disclosure Statement and Plan. These tracts are zoned for specific uses and involve ultimate purchasers contemplating different uses.

The offer expected by the Debtor is Phase I of the Debtor's Plan to liquidate real property assets which sale will be referred to as "Phase I." The sales price is based on an offer consistent with an Appraisal prepared for the Debtor in 2002. The sale will be noticed to creditors pursuant the Bankruptcy Code and Rules and approved by the Court as required by applicable provisions of the Code, Rules and Local Rules. Any property not sold in Phase I on or before November 22, 2004, will be sold in Phase II as described below.

The Debtor will enter into a Listing Agreement with a reputable commercial real estate broker/agency to sell other property not sold in Phase I and needed to fund the allowed claims whether compromised

or not. The Debtor shall not be required to receive Court approval for this engagement. The property will be marketed for sale to prospective buyers and when an acceptable offer is received, the Debtor will move for the sale, notice the same to creditors pursuant to applicable provisions of the Bankruptcy Code and Rules subject to approval by the Court. This portion of the sale of the property will be referred to as "Phase II." The Debtor anticipates that the property will be sold in a period of twelve (12) to eighteen (18) months. The Debtor anticipates that the sale of the property in Phase II will result in approximately $1,500,000.00 to the estate for distribution to its creditors.

Unless otherwise stated in this Plan, after confirmation, the Debtor will not be required to obtain Bankruptcy Court approval for any of its activities including further sales of assets, settlements of claims, or otherwise. Any sale of property or assets post-confirmation will be free and clear of liens, claims and interest pursuant to §1141(c), with any such liens, claims and interest attaching to the net proceeds of sale in accordance with their presale priorities.

The Debtor's assets now consist of its facilities, real property and personal property located thereon. accounts receivable; cash on hand; rental or lease income; and claims against third parties which may or may not be collectable.

**Real Estate**: The Debtor will file a Motion within thirty (30) to forty-five (45) days of the filing of the Plan or upon receipt of a binding offer to purchase, whichever occurs first, seeking to sell real property subject to an offer to purchase. Details of the offer have not been finalized, but could include three separate purchasers for three separate tracts or parcels of the Debtor's property. Details of proposed purchase will be included in the Motion to Sell Property. The estimated purchase price is $2,600,000.00. This sale is referred to as the Phase I sale.

Simultaneously, the Debtor will enter into a Listing Agreement with a reputable commercial real estate agent/broker for the purpose of marketing and selling other real estate and not deemed necessary to the operation of or fulfillment of the Debtor's mission to the Sea Island community. It is estimated that the Debtor will receive approximately $1,500,000.00 from the sale of the real property referred to as the Phase II sale. Should the Debtor fail to receive the offer described above in Phase I, the property designated for sale in Phase I will be sold in Phase II. The Debtor anticipates the period of time needed for Phase II will be twelve (12) to eighteen (18) months.

**Personal Property Assets**: The Debtor will retain all personal property deemed necessary to the operation of its business. No sale of personal property is anticipated by the Debtor.

**Accounts Receivable**: The Debtor will continue to collect accounts receivable in the ordinary operation of its business. There are no serious delinquencies as to any account due the Debtor. To the extent that any of the accounts are uncollectable, the Debtor will make a determination, in its sole discretion and based on its sound business judgment to write off such accounts.

**Potential Claims**: The Debtor has filed an Adversary Proceeding against its former CEO and CFO which seeks, among other relief, monetary damages and compensatory relief. To the extent funds are recovered from this Adversary Proceeding, the Debtor will use the funds to operate and in furtherance of the Plan. Reference is made to the Adversary Proceeding for the details concerning the Debtor's claim.

**Cash on Hand:** At the time of the filing of this Plan, the Debtor had available the approximate sum of $_____ in its operating account (after payment of current property taxes). These funds are used to cover operating expenses and are not contemplated for use in funding the Plan.

IV.     **ALLOCATION OF FUNDS TOWARDS CLASSES OF CLAIMS:**

Upon the receipt of proceeds from the sale contemplated in Phase I, the Debtor will pay the amounts to each Class set forth below. To the extent that the Class is not paid in full, additional payments will be made from the sale or sales contemplated in Phase II in the order of priority set forth in the Plan. Any creditor secured by a claim on real property will retain its lien on all remaining real property. Initially, fifteen percent (15%) of the proceeds received for the sale in Phase I will be held in reserve for payment of administrative claims and costs associated with the sale. Class I claimants will receive 5.0% of the net proceeds of the sale received by the Debtor with the remaining funds used to pay ordinary costs associated with the sale. Payments will be made by the Debtor and distributed among the claimants pursuant to an agreement between the Debtor the members of this Class. To the extent there are excess funds, the Debtor will hold those funds in a separate account to be used to defray the costs of any sale conducted in Phase II. Upon the completion of Phase I and Phase II and the distribution of funds to each class, any and all remaining funds will be distributed to Class 11 claimants.

As real property is sold in each Phase identified herein and/or other funds are made available and in possession of the Debtor, those funds will be allocated as follows:

**Class 1** will receive payment in full of their allowed claims upon the sale of property in Phase I unless agreed otherwise to facilitate payments to the remaining classes. The holders of claims in this class may agree to payment of installments for a portion of their allowed claim. No less than 15% of the net proceeds from the Phase I sale will be set aside for payments to holders of claims in this Class. Any funds remaining after payment of Class 1 will be held for payment to Class 11 as described below.

**Classes 2, 3, 4 and 5** will receive payment in full of their allowed claim from the net proceeds from Phase I as payment in full of these claims. Unless agreed otherwise, no payment from the proceeds received from Phase II will be paid to holders of claims in these classes.

**Classes 6 and 7** will receive payment in full of their allowed claim from the net proceeds from Phase I as payment in full of these claims. Unless agreed otherwise, no payment from the proceeds received from Phase II will be paid to holders of claims in these classes.

**Class 8** will receive no payment from either Phase I or Phase II unless sufficient funds are available after payment of all agreed or allowed claims are paid in full. These claimants are currently being paid according the terms of the Notes with the Debtor.

**Class 9** will receive no payment from either Phase I or Phase II unless the Court's judgment in the pending Adversary Proceeding finds that a valid claim exists. In that event, and only in that event, this claimant will receive payment from funds received in Phase II only or by monthly installments in the same manner as the holders of Class 10 claims.

**Class 10** will receive the full value of their secured claim from the net proceeds from Phase II with the remainder of the agreed claim amount or allowed claim paid in monthly installments over a period not exceeding ten (10) years after the sale of the property contemplated in Phase II or sooner from operating funds in the discretion of the Debtor.

**Class 11** will receive all remaining funds from net proceeds of the sales contemplated by Phase I and Phase II after payment in full of the agreed or allowed claims for the remaining Classes scheduled to receive payments in this Plan. A lump sum payment from the Phase I reserve described herein of not less that 5.0% of the net proceeds of Phase I will be distributed to the claimants in this class on a pro rata basis. In addition, other pro rata payments will commence sixty (60) days after the sale of the property contemplated under Phase II after payment in full of claims in Classes 2-10. The amount paid from this additional sum will be calculated based upon the remaining proceeds from Phase II and after other class payments. It is the desire of the Debtor to pay as much to this class as possible from the sales contemplated in Phase I and Phase II, but not less than 5.0% of the net proceeds of the Phase I sale.

## V.    FEASIBILITY OF PROPOSED PLAN, AND STATUS OF THE DEBTOR AFTER CONFIRMATION:

It is provided in §1129(a)(11) that in order for a Plan of Reorganization to be confirmed, it must be demonstrated that it is not likely to followed by a liquidation or the need for further reorganization of the Debtor or any successor of the Debtor under the Plan, unless the liquidation or reorganization is proposed in the Plan of Reorganization itself. This Plan proposes a liquidation of the Debtor's ownership interest in certain real estate not deemed necessary to reorganization or the fulfillment of its mission. Based upon the actions taken in this case to date, and the anticipated interest in the remaining asset of the Debtor, it is believed that reorganization efforts will be successful.

After confirmation of the Plan, the Board of Directors of the Debtor will appoint a Disbursing Agent designated and authorized to distribute funds consistent with the provisions of the Plan and execute any further documentation which may be required as a result of confirmation and the terms of this Plan. The Disbursing Agent is exonerated from any claims of liability or responsibility for his or its actions, provided those actions are in substantial compliance with the term of this Plan as duly exercised in a fiduciary capacity.

From and after confirmation of this Plan the Debtor, its officers, directors and employees, are exonerated and released from any and all claims. The Debtor will, from and after confirmation of the Plan, be indebted for and obligated to pay <u>only</u> those obligations and liabilities as set forth herein.

Any defaults whatsoever, with respect to any indebtedness or obligation, or in the terms and conditions thereof, which are or may be based on events, facts or occurrences taking place on or before the date of confirmation, lapse of time, or both, would take place or be deemed to take place on or before such date and shall be deemed to have been waived and shall not thereafter be a basis for the exercise by any person for any right or remedy whatsoever, as a creditor or claimant against the Debtor

## VI.    CLAIMS:

The Debtor retains the right to file objections to claims within 180 days after confirmation. Debtor has listed several known claims as disputed in its schedules. All filed claims will be allowed as filed unless otherwise ordered by the Court.

## VII.    EXECUTORY CONTRACT AND UNEXPIRED LEASES:

Effective upon the date of confirmation of this Plan, all existing executory contracts, agreements, and leases except those created by this Plan, are rejected.

**NEED TO ASSUME HMR CONTRACT AND REJECT GE LEASE CLAIMS.**

## VIII.    JURISDICTION:

**a.    Retention of Jurisdiction.** The Court shall retain jurisdiction over the reorganized Debtor, its property, and all other parties appearing in the reorganization proceeding as provided by this Plan or by Order of the Court. The Court may authorize the Debtor to examine, copy and produce the Debtor's books, records and papers for the purposes of (i) determining all claims that have been asserted against the Debtor, or the Debtor's estate; and (ii) carrying out and giving effect to any and all provisions of the Plan and the Order Confirming Plan; and the Court shall retain jurisdiction as provided in the Bankruptcy Code until entry of the final decree discharging the Debtor in the reorganization proceeding.

**b.    Prosecution and Defense of Claims.** The Debtor through the Disbursing Agent shall retain full power after Substantial Consummation to prosecute and defend any causes of action or proceedings existing at Substantial Consummation, or resulting from the administration of the estate of the Debtor or resulting from any other claim by or against the Debtor or its assets, or arising prior to or existing before Substantial Consummation. The Debtor may use the services of its attorneys and accountants in the prosecution or defense of such claims, and shall have full power, subject to the approval of the Court, to employ, retain and replace special counsel to represent it in the prosecution or defense of any action, and to discontinue, compromise, or settle any action or proceeding, or adjust any claim. The net proceeds received from any such litigation by the Debtor shall be deposited with the Debtor's estate for payment of the claims of the Debtor's estate.

## IX.    DISCHARGE OF THE DEBTOR:

The entry of an Order Confirming Plan acts as a discharge of any and all liabilities of the Debtor that are dischargeable under §1141 of the Bankruptcy Code.

## X.    POST-CONFIRMATION ACTS:

Distributions will be made monthly to Classes 1-12, as applicable, upon presentation of detailed invoices, with the exception of wages, payroll and other tax liabilities which will be paid when due. Distributions to Class 13 will be made on a pro rata basis, quarterly. The Disbursing Agent will maintain proper records of all funds and distributions, and will provide such records to any parties in interest upon written request.

The Debtor and its agents shall perform all acts necessary to complete and consummate this Plan, to include:

(1) Prosecute all causes of action against third parties and challenge appropriate claims.
(2) Defend any actions brought against the Debtor, as may be allowed by the Court.
(3) Execute and file all required legal documents.
(4) Perform any and all functions required by the Code.

## XI. RETENTION OF JURISDICTION:

The Bankruptcy Court shall retain jurisdiction of this case pursuant to and for the purposes of §105(a) and §1127 of the Code and for, inter alia, the following purposes

(1) To consider any modifications of the Plan under §1127 of the Code;
(2) To hear and determine any and all objections to the allowance of claims and/or interests;
(3) To determine any and all applications for compensation and/or reimbursement of expenses for periods prior to or after the Confirmation Date;
(4) To determine any and all controversies, suits and disputes arising under or in connection with the Plan, its interpretation or enforcement, and such other matters as may be provided for in the final order confirming the Plan;
(5) To effectuate all payments and distributions under, and performance of the provisions of the Plan; and;
(6) To determine any applications, adversary proceedings and litigated matters pending on the Confirmation Date; and
(7) To consider, hear and manage any actions filed on behalf of the LT.

## XII. MISCELLANEOUS:

In the event any provision in the Plan is determined to be unenforceable following the confirmation date, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan. All actions of the Debtor and its agents during the course of this case to date are reaffirmed.

With regard to any class of creditors impaired but not accepting the Plan by the required majority in number and two-thirds (2/3) in amount, the Debtor requests the Bankruptcy Court to find that the Plan does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interest that is impaired under the Plan, so that the Court may confirm ("cram-down") the Plan without such acceptances by the impaired classes.

Respectfully submitted on behalf of the Board of Directors of Sea Island Comprehensive Health Care Corporation -

/s/ J. Ronald Jones, Jr.
J. Ronald Jones, Jr.
District Court I.D. #5874
CLAWSON & STAUBES, LLC
304 Meeting Street
Charleston, SC  29401
Telephone: (843) 577-2026
E-Mail: rjones@clawsonandstaubes.com

September 22, 2004
Charleston, South Carolina.

**EXHIBIT "A"**
(Sea Island Master Plan)



SEA ISLAND MASTER PLAN
~ CHARLESTON   SOUTH CAROLINA ~

August 24, 2004