UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO.  04-00788-jw |
| SEA ISLAND COMPREHENSIVE | ) | CHAPTER 11 |
| HEALTH CARE CORPORATION | ) | |
| | ) | |
| DEBTOR | ) | |
| | ) | |

To: All Creditors and Parties In Interest

### NOTICE AND APPLICATION FOR SALE OF PROPERTY FREE AND CLEAR OF LIENS AND FOR APPROVAL OF THIRD PARTY BIDDING PROCEDURES

YOU ARE HEREBY NOTIFIED that the Debtor is applying for approval to sell Debtor's assets described below free and clear of all liens, encumbrances and interests according to the terms and conditions stated below and more specifically described in the proposed contract to purchase attached hereto as Exhibit "A" and incorporated herein by reference.

TAKE FURTHER NOTICE that any response, return and/or objection to this application should be filed with the Clerk of the Bankruptcy Court no later than 20 days from service of motion/application and a copy simultaneously served on all parties in interest (unless a shortened deadline is allowed by Order of this Court).

TAKE FURTHER NOTICE that a hearing will be held on this application on February 17, 2005 at 10:00 a.m., at U.S. Bankruptcy Court, 145 King Street, Charleston, South Carolina 29401.No further notice of this hearing will be given.

COMPETITIVE BIDDING is expected at this hearing. Parties seeking to bid on the property under the same terms and conditions of the contract to purchase will be allowed.  Parties seeking to bid must be prepared to provide payment of an earnest money deposit as required by the contract to purchase plus the break-up fee as set forth below and should file a response with the Court indicating their intention to bid on the property at the hearing. A monetary deposit of $110,000.00 is required of each bidder which is equal to the deposit required by the contract to purchase ($35,000.00 ) plus the break-up fee ($75,000.00) delivered at the hearing and paid in certified funds to the attorney for the Debtor.

| TYPE OF SALE: | Private.  Subject to higher and better offers.[1] |
|---|---|
| PROPERTY TO BE SOLD: | 42.77 acres plus part of PUD-1 less part of  PUD-4 as shown on map.  Exhibit A. |
| PRICE: | $3,500,000.00 |
| APPRAISAL VALUE: | $3,500,000.00 |

---

[1] See Additional terms and conditions regarding higher and better offers contained herein and terms and conditions as to third party bidding.

| BUYER: | River Birch Development, LLC | |
|---|---|---|
| PLACE AND TIME OF SALE | Thirty (30) days after close of inspection period.[2] | |
| SALES AGENT/AUCTIONEER/ BROKER: | N/A | |
| COMPENSATION TO SALES AGENT/ETC.: | Paid by Buyer. | |
| ESTIMATED TRUSTEE'S COMPENSATION: | N/A | |
| LIENS/MORTGAGES/SECURIT Y INTERESTS ENCUMBERING PROPERTY: | Rural Development[3]<br>Internal Revenue Service<br>SC Dept of Revenue<br>Charleston Co. Business License<br>Morris D. Ashe<br>SC Dept. of Health & Human Svcs. | $1,463,455.66<br>$1,473,405.13<br>$    52,126.77<br>$    20,520.05<br>$      3,500.00<br>$  432,283.00 |
| DEBTOR'S EXEMPTION: | N/A | |
| PROCEEDS ESTIMATED TO BE PAID TO ESTATE: | $3,500,000.00 (less the customary closing costs to be paid by the Seller). | |

Applicant is informed and believes that it would be in the best interest of the estate to sell said property by public sale. Applicant also believes that the funds to be recovered for the estate from the sale of said property justify its sale and the filing of this application. The sale of this property is contemplated by the Plan of Reorganization and is the first step toward consummation of the Plan terms.

The Court may consider additional offers at the hearing held on this notice and application for sale. The court may order at any hearing that the property be sold to another party on the same terms with a more favorable price. The Debtor has agreed with the proposed buyer that a minimum over bid of $250,000.00 on the same terms will be accepted from third parties at the hearing on the approval of the sale.

The Debtor has also agreed that River Birch Development, LLC shall be entitled to a break-up fee not to exceed $75,000.00 in the event that the property is sold to a third party for a higher price allowing reimbursement of actual costs and fees. Proof of the entitlement to the break-up fee will be the responsibility of River Birch Development, LLC and is subject to Court approval.

The Debtor may seek appropriate sanctions or other similar relief against any party filing a spurious objection to this notice and application.

---

[2] The Inspection period ends on May 1, 2005, and the closing is tentatively schedule for thirty (30) days thereafter.

[3] The Debtor will retain approximately 10 acres of real property surrounding its current offices, The Nursing Home, Health Center and other improvements. This lien will not be paid from the proceeds of the sale as these lien holders are adequately protected by the property to be retained by the Debtor. The Rural Development mortgage is the only mortgage that encumbers the property to be sold. The retained property includes an area allowing for modest expansion of its services.

WHEREFORE, applicant requests the Court issue an order authorizing the sale of said property and such other and further relief as may be proper.

**January 20, 2005**
**Charleston, South Carolina**

/s/ *J. Ronald Jones, Jr.*
J. Ronald Jones, Jr.
U.S. District Court I.D. 5874
CLAWSON & STAUBES, LLC
126 Seven Farms Drive, Suite 200
Charleston, SC 29492-7595
(843) 577-2026

Attorney for Debtor

## CONTRACT FOR THE SALE AND PURCHASE
## OF REAL ESTATE

## PROPERTY OF SEA ISLAND COMPREHENSIVE HEALTH CARE CORPORATION
### APPROXIMATELY 43 ACRES BOUNDED BY
### MAYBANK HIGHWAY, BOHICKET ROAD AND ANGEL OAK ROAD
### CHARLESTON COUNTY, SOUTH CAROLINA

**RIVER BIRCH DEVELOPMENT, LLC** ("Buyer"), a North Carolina limited liability company, hereby agrees to purchase, and **SEA ISLAND COMPREHENSIVE HEALTH CARE CORPORATION** and **SEA ISLAND DEVELOPMENT FUND, INC.** (together "Seller"), South Carolina nonprofit corporations, hereby agree to sell, all of the property in Charleston County, South Carolina which is described below ("Property"), upon the terms and conditions described hereafter:

1.    **Seller's Bankruptcy.**  Seller is a Debtor in possession pursuant to Chapter 11 of the United States Bankruptcy Code, in a bankruptcy proceeding pending in the United States Bankruptcy Court, District of South Carolina ("Bankruptcy Court"), Case No. 04-00788-jw ("Bankruptcy").  Seller's execution and performance of this Contract is subject to approval by the Bankruptcy Court, pursuant to Section 363 of the Bankruptcy Code, and appropriate notice, motion, hearing and order thereunder.  Without limitation, the Property shall be transferred to Buyer free of all claims, liens and encumbrances pursuant to Section 363(f) of the Bankruptcy Code.  In addition to the terms and conditions of sale between Seller and Buyer relating to the Property under this Contract, it is a further condition of Buyer's offer and this Contract that if there be any conditional approval of this Contract which shall thereafter be subject to further offer by any competing buyer, that acceptance by Seller and approval by the Bankruptcy Court of any such competing offer be conditioned upon the following:

(a)    that the competing offeror enter into a contract with the Seller on the identical terms set forth in this Contract, excepting only the purchase price;

(b)    that the competing offeror offer a purchase price of not less than $250,000 more than the purchase price under this Contract; and

(c)    that the competing offeror pay to Buyer the sum of $75,000, as a break-up fee, simultaneously with the execution of a contract between Seller and such succeeding offeror.

2.    **Property.**  The Property is comprised of approximately 43 total acres within a larger tract of land bounded by Maybank Highway, Bohicket Road and Angel Oak Road in Charleston County, South Carolina, which larger tract of land is more particularly described on **Exhibit A** attached.  The Property more particularly is comprised of certain tracts of land appearing on the P.U.D. Master Plan ("PUD" or "PUD Plan") prepared by Forsberg Engineering and Surveying, Inc. attached hereto as **Exhibit B-1**, which tracts of land comprising the Property are numbered 3 (2.56 acres total), 4 (4.34 acres total), 5 (9.53 acres total), 6 (3.90 acres total), 7 (2.54 acres total), 8 (8.43 acres total), and 9 (8.97 acres total).  (Such tracts of land may hereafter

be referred to by their respective number.) In addition to the foregoing, Seller will convey a part of Tract 1, and shall retain a part of Tract 4, as shown on **Exhibit B-2** attached hereto.

3.   **Purchase Price.** The purchase price of the Property shall be $3,500,000.

4.   **Deposit and Return or Credit of Earnest Money.** Within five (5) business days of Seller's complete execution of this Contract and redelivery to Buyer, Buyer shall deposit with a title insurance company selected by Buyer, as escrow agent, $35,000 to secure Buyer's performance hereunder. Any interest earned upon Buyer's earnest money deposit funds shall be payable to Buyer in all events. Buyer shall be entitled to immediate return of its earnest money deposit upon failure of the Bankruptcy Court to approve Seller's execution and performance of this Contract, upon written notice to the escrow agent of termination of this Contract for any reason during the inspection period provided in paragraph 5, and thereafter for nonsatisfaction of any Contract term, condition or contingency, or upon any default by Seller. However, Buyer shall not be entitled to the benefit of any of the contingencies set forth in paragraph 6 beyond the inspection period, other than those identified to Seller in writing during the inspection period as not satisfied, or those which by change of circumstances beyond Buyer's control become unsatisfied after the inspection period but prior to closing.

5.   **Inspection Period; Extension and Payment; Election to Proceed.** Buyer shall have the right for a period of sixty (60) days from the later of the date of Seller's complete execution and redelivery of this Contract, the date of entry of the Bankruptcy Court's order approving Seller's execution and performance over this Contract, and Seller's full compliance with paragraph 7 below to determine if the Property is acceptable to Buyer, which determination shall be made in Buyer's sole discretion. Buyer shall give Seller written notice within the inspection period if Buyer elects to terminate the Contract.

6.   **Contingencies.** In addition to all of its other terms and conditions, whether more generally or more specifically stated elsewhere, and during the times and under the circumstances described in paragraph 4, this Contract shall be subject to the following contingencies, for the benefit of Buyer and to Buyer's reasonable satisfaction in consideration of Buyer's intended multi-family and retail mixed use of the Property.

A.   Availability at the Property of adequate public or private water and sewer service (both sanitary sewer and storm drainage systems), including all necessary easements, agreements, permits or approvals at no cost to Buyer except for normal user tap on and consumption fees.

B.   Availability of adequate electrical, telephone, natural gas and cable television service to the Property.

C.   Availability of adequate access to the Property from Maybank Highway, Bohicket Road and Angel Oak Road, with all existing or planned roads, highways or rights-of-way having no adverse effect upon access to and full use of the Property.

D.   Absence of any pending or proposed utilities service moratoriums, zoning or other land use proceedings, eminent domain proceedings, or actions of other kinds by

- 2 -

any governmental authorities, private or public organizations, or individuals, affecting the PUD and the Property.

      E.    Absence of any restrictive covenants, rights-of-way, easements or other property rights or encumbrances which could adversely affect Buyer's use of, access to or improvements to any of the Property, exclusive of PUD requirements.

      F.    Availability of flood hazard insurance for any portion of the Property within any flood hazard area.

      G.    Absence of any environmental hazard or waste or adverse soil or other geological condition upon the Property.

      H.    Absence of any title defects or unapproved encumbrances affecting the Property, and absence of any survey disputes with respect to Property boundaries and acreage. Buyer shall notify Seller of any objections to title and survey matters ("Objections") during the inspection period. Seller shall in good faith exert best efforts to cure such Objections prior to closing. Buyer's obligations hereunder and the closing shall be subject to Seller's curing all Objections, unless Buyer in its sole discretion elects to, and acknowledges in writing that it will, accept title to the Property subject to uncured Objections. Matters affecting the Property which are determinable from the public records of Charleston County not identified by Buyer as Objections, together with Objections not cured by Seller which Buyer elects to accept, shall constitute permitted exceptions ("Permitted Exceptions").

      I.    Compliance of all the Property with all applicable laws, ordinances, codes and regulations. Seller shall be responsible for securing compliance prior to closing.

      J.    Confirmation that no part of the Property is subject to any form of restriction or regulation by reason of being part of, or under investigation as potentially constituting, any archaeological or historical site, pursuant to any governmental or other authority.

      K.    Confirmation that the Property contains a minimum of 27 Useable Areas. "Useable Acres" shall mean the gross acres contained within the Property less all buffers, dedicated open space, easements, rights of way, and other areas precluded from use for development by any form of public or private regulation, restriction or encumbrance.

      L.    Buyer's obtaining all governmental approvals (including amendment of the PUD if necessary) in order to: (i) construct the entry way and access drive from Bohicket Road across the fire station property, as shown on the PUD Plan; (ii) provide additional access to the Property from another driveway location along Bohicket Road, east of the main entry as presently shown on the PUD Plan; (iii) relocate the driveway from Maybank Highway within the Property for more efficient utilization of Property acreage; and (iv) obtain approval to fill for construction certain areas shown as "wetlands" on the PUD Plan in order to yield at least 27 Useable Acres for development.

- 3 -

7.    **Delivery of Documents.**

A.    Seller shall deliver to Buyer, as promptly as available and in any event within ten (10) days of Seller's execution of this Contract, and as received by Seller thereafter, copies of the following documents, if any, which are either in possession of Seller or which are obtainable by Seller from governmental agencies or third parties with commercially reasonable efforts: all PUD documents, including all plans, narrative requirements, correspondence, notices, minutes and other records of PUD related proceedings, and all agreements, contracts, leases, appraisals, title reports, title insurance policies, easements, restrictions, surveys, site plans, engineering reports, soil reports, environmental studies and testing reports, licenses, permits, land plans, subdivision plats, professional certifications and other such material information relating to the Property. Seller's rights to such documents shall be assigned to Buyer at closing. Seller shall designate one representative to be the contact person with whom Buyer should communicate about these and all other matters relating to this Contract, and who shall be responsible for providing the Buyer all information, documents, access and other cooperation to which Buyer is entitled under this Contract.

B.    Buyer shall deliver to Seller copies of all surveys and environmental reports obtained by Buyer, and shall assign to Seller Buyer's rights to such work product, but only at the time of termination of this Contract and conditioned upon: (i) the Contract having been approved by the Bankruptcy Court with Buyer remaining buyer, without preemption by any competing buyer; (ii) the Seller having fully complied with, and not being in breach of, any provisions of the Contract; and (iii) the Buyer having been reimbursed its earnest money deposit, unless all Contract conditions, contingencies and requirements shall have been satisfied in full, and Buyer shall nevertheless have failed to close.

8.    **Survey.** Property boundaries, gross acreage and usable acreage shall be determined and depicted by recordable plat or survey prepared by a registered land surveyor or engineer, conducted at the direction and expense of Buyer. The survey and surveyor's report shall be in ALTA approved form and certified to Buyer, the title insurer and any third party lender designated by Buyer. The survey shall locate and depict all improvements, easements, rights-of-way, planned roadways, setbacks, buffers, flood areas, bodies of water or watercourses, and any other particulars which may be required by law or custom, or as may be reasonably requested by Buyer. All encroachments, boundary issues or other defects identified shall be remedied and resolved promptly at Seller's expense.

9.    **Title Insurance.** Buyer shall be able to obtain prior to closing a title insurance commitment, to insure title to the property in Buyer's name, which commitment shall be subject only to the Permitted Exceptions, and which commitment shall provide for insurance without exception for, or delete or insure over, such preprinted and other standard exceptions as marital rights or claims, unrecorded easements, unrecorded liens, and taxes or assessments not shown as liens by the public records. Buyer shall be able to obtain upon closing a title insurance policy in accordance with the commitment, in the full amount of the purchase price, with Buyer or Buyer's designee and any third party mortgagee as named insureds, with the premium therefor to be paid by Buyer.

- 4 -

10.    **Access.** Buyer, its employees, agents, representatives and contractors shall have unrestricted rights of access to the Property for any purpose related to this Contract, including but not limited to the rights to perform inspections, to conduct soil test borings, to survey and perform engineering studies, and to cut brush and small trees as necessary to obtain access or to conduct tests and other work. Buyer shall indemnify Seller against any third party claims arising from such activities on the Property on behalf of Buyer.

11.    **Seller Cooperation.** Seller shall cooperate fully with Buyer, and shall execute all documents necessary as to the Property, in connection with any permit or other application or petition to any public or private authority, so long as such cooperation shall be at no expense to Seller and shall not result in the imposition of any liability upon Seller, or of any encumbrance upon the Property prior to closing.

12.    **Closing Date.** Upon Buyer's election to purchase, contingent upon Seller's full compliance with all Contract provisions, and satisfaction (or waiver) of all Contract terms, conditions and contingencies, closing shall occur on or before thirty (30) days following the date of expiration of the inspection period

13.    **Closing Conditions and Requirements.**

A.    The Property shall be in substantially the same condition at closing as on the date of this contract; however all unoccupied space shall be delivered free of any materials or debris, broom clean.

B.    All deeds of trust or mortgages or other such liens, all unpaid tax or assessment liabilities (including tax liabilities for all periods prior to the closing date which may have been deferred or unpaid for any reason), and all other encumbrances and charges against the Property (whether or not now appearing on the public records) which can be discharged by the payment of money, shall be paid and cancelled by Seller prior to or at closing, or promptly when presented if presented after closing. Seller shall at closing execute an indemnity agreement reasonably satisfactory to Buyer and its title insurer with respect to all such matters (*i.e.* tax liabilities and assessment liabilities).

C.    Title shall be delivered at closing by general warranty deed, and shall be insurable as indefeasible marketable fee simple absolute title, at regular rates, free of all encumbrances, except for the Permitted Exceptions.

D.    Seller shall furnish at closing an affidavit and indemnification agreement in form satisfactory to Buyer certifying that all obligations for labor or materials, if any, furnished to the Property within the statutory period for lien filing prior to the date of closing have been paid, and indemnifying Buyer and its title insurer against all loss from any cause or claim arising therefrom.

E.    Seller shall cause to be transferred to Buyer by the appropriate governmental agencies all transferable permits, approvals, certificates and licenses associated with the Property, to the extent that such governmental authorizations do not run with the land.

- 5 -

F.    Seller shall execute and deliver at closing an affidavit and indemnity agreement satisfactory to Buyer certifying that Seller is not a "foreign person" for the purposes of Section 1445 of the Internal Revenue Code.

G.    The Property shall be conveyed by Seller to Buyer in conformity with all applicable provisions of all applicable zoning and subdivision ordinances. Seller, at Seller's expense, shall prepare and cause to be filed any plats or maps or other documents required to convey the Property in accordance with such ordinances. In the event of any doubt as to the applicability and requirements of such ordinances, Seller shall obtain a written opinion of the attorney for the governing municipality interpreting the ordinances as they may apply to the transaction contemplated by this Contract.

H.    Seller shall cause to be transferred to Buyer by the appropriate governmental agencies all transferrable permits, approvals, certificates and licenses associated with the Property, to the extent that such governmental authorizations do not run with the land.

I.    Buyer shall pay to Seller the purchase price less Buyer's *pro rata* share of current year *ad valorem* taxes, transfer taxes and less all revenue stamps and a credit for all deposits or payments made pursuant to this Contract. Such payment shall be by wire transfer or bank check or attorney's trust account check reasonably acceptable to Seller.

**14.    Closing Costs.**  Seller shall be responsible for the payment of the expense of preparation of all documents of conveyance, of all revenue stamps, transfer taxes or other charges imposed upon the Seller or the Property by reason of its sale (if any), and of all other costs and expenses as may be expressly provided in this Contract. Buyer shall be responsible only for such expenses and charges incurred by Buyer with the professionals and other third parties engaged directly by Buyer.

**15.    Seller's Representations and Warranties.**  Seller represents and warrants to Buyer: (a) that Seller holds indefeasible marketable fee simple absolute insurable title to the Property and that Seller is not a "foreign person" which would subject Buyer to the withholding tax provisions of Section 1445 of the Internal Revenue Code; (b) that the Property is not subject to any title claims or defects, or survey or boundary disputes; (c) that the Property is not subject to any pending or proposed utilities service moratoriums, zoning or other land use proceedings, eminent domain proceedings, or actions of other kinds by any governmental authorities, public or private organizations, or individuals; (d) that the Property is not subject to any tax or assessment liabilities which have been deferred or unpaid for any reason; (e) to the best of Seller's knowledge without investigation or inquiry, that the Property and its existing and prior uses and activities thereon, including but not limited to the use, maintenance and operation thereof by Seller, comply and have at all times complied with all laws, including environmental laws, that the Property has not been used for the disposal or storage of hazardous materials, and that no hazardous materials are stored or located upon the Property, that no hazardous materials have migrated from the Property upon or beneath other properties, nor have any hazardous materials migrated or threatened to migrate from other properties upon, about or beneath the Property, that the Property has not been used for the disposal or burial of nonhazardous trash or other materials, that the Property does not contain any cemetery, and that the Property does not

- 6 -

MMMCharlotte #27589 v5

constitute or contain a designated historical or archaeological site; and (f) that the Property is not subject to any contracts, options, leases, commission obligations, liens, assessments or other encumbrances created or agreed to by the Seller, except as may be specifically identified herein, that all parties who have, or may have, any interest in the Property have executed this Contract, and that during the term of this Contract and prior to closing no action will be taken by Seller to lease, convey, encumber or otherwise affect the Property, or title thereto, or to diminish the value of the Property, without Buyer's prior written consent.  Seller agrees to indemnify and hold harmless Buyer and its directors, officers, shareholders, partners, managers, members and employees, from and against any and all claims, demands, actions causes of action, suits, proceedings, liabilities, damages (direct or consequential), expenses and costs, including those for attorneys' and other professionals' fees, of every nature whatsoever arising from the breach of any representation or warranty set forth herein.  In addition to the obligation of Seller to indemnify Buyer pursuant to this Contract, Seller shall, upon demand of Buyer, and at Seller's sole cost and expense, promptly take all actions to remediate the Property as required by any federal, state or local governmental agency or which remediation otherwise is necessary to remove any hazardous materials form the Property, by reason of the presence upon, about or beneath the Property of any hazardous materials or violation of any environmental laws as of the date of closing, utilizing such methods of remediation as shall have been approved by the governing authorities.  As used in this Contract, the term "hazardous materials" shall mean and include material amounts of any illegal, regulated, hazardous, toxic, dangerous or otherwise harmful waste, substance or material in violation of any applicable federal, state, county, city or other law, statute, ordinance, treaty, code, rule, regulation, order or decree as may now or at any other time be or have been in effect, regulating, establishing liens for the cleanup of, imposing liability of standards of conduct concerning, or in any such manner relating to any hazardous materials (the "environmental laws").  The representations and warranties of this paragraph shall survive the closing of Buyer's purchase of the Property.

     **16.**    **Default by Buyer.**  If Buyer shall fail to notify Seller of any election to be made hereunder, shall fail to pay any installment of earnest money or other amount when due, or shall fail to perform or comply with any other term of this Contract, Seller shall notify Buyer of such default as provided herein.  Buyer shall have five (5) days from receipt of such notice to make any payment due and cure any monetary default, and shall have fifteen (15) days from the receipt of such notice to cure any nonmonetary default, before Seller shall be entitled to invoke any rights or remedy against Buyer provided in this Contract.  Seller's sole remedy for any breach of this Contract not cured within the times so allowed shall be termination of this Contract and forfeiture of Buyer's earnest money deposit or deposits, or such payments as may have been made directly to Seller, or such part thereof as shall have been defined herein, as liquidated damages.

     **17.**    **Default by Seller.**  If Seller shall fail to perform or comply with any term of this contract, Buyer shall notify Seller of such default as provided herein.  Seller shall have fifteen (15) days from receipt of such notice to cure any default.  If Seller shall have failed to cure any default within the fifteen (15) day period, Buyer shall be entitled to:  (a) cure the default for Seller's account and charge all related expenses, including reasonable attorneys' and other professional fees, to Seller; and (b) pursue specific performance, including recovery of Buyer's reasonable attorneys' fees in enforcing this Contract.

18.    **Extension of Time.**  Buyer, at its election, shall be entitled to a day by day extension of any period of time, or beyond any date, set forth herein, on account of any delay or default in performance by or attributable to Seller until such delay, default or other condition is remedied, subject to Seller's consent, which shall not be unreasonably withheld.

19.    **Notices.**  All notices, transmittals and other communications with respect to this Contract shall be personally delivered, or deposited in the United States mail, postage prepaid, certified, return receipt requested, or deposited with a reputable courier service, delivery charges prepaid, to:

**Buyer:**          River Birch Development, LLC
               ATTN:  Hugh F. Beckwith, Jr.
               740-1A NW Broad Street
               Southern Pines, NC 28387
               Fax No.: (910) 246-0415

**Copy to:**        Morris, Manning & Martin, LLP
               ATTN:  John H. Northey III and Lynn F. Chandler
               201 S. College Street, Suite 2300
               Charlotte, NC 28244
               Fax No.: (704) 554-5050

**Seller:**         Sea Island Comprehensive Health Care Corporation
               3627 Maybank Highway
               Johns Island, SC 29455
               ATTN:  Ms. Gwen Bennett, Acting Director
               Fax No.: _____

**Copy to:**        Clawson & Staubes, LLC
               ATTN:  J. Ronald Jones, Jr.
               304 Meeting Street
               Charleston, SC 29401-1544
               Fax No.: (843-720-0822

20.    **Parties.**  This Contract shall be binding upon and shall inure to the benefit of the parties, and their heirs, successors and assigns. As used herein, words in the singular include the plural, and the masculine includes the feminine and neuter genders, as appropriate.

21.    **Survival.**  Any provision of this Contract which by its nature and effect if required to be observed, kept or performed after the closing shall survive the closing and shall remain binding upon and for the benefit of the parties until fully observed, kept or performed.

22.    **Severability.**  If any term, covenant or condition of this Contract or the application thereof to any party or circumstances shall be invalid or unenforceable, the remaining terms hereof shall not be affected thereby, and each term shall be valid and enforceable to the fullest extent permitted by law.

- 8 -

23.    **Counterparts.** This Contract may be executed in several counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

24.    **Assignment.** Except by Buyer to any affiliated person or entity, this Contract may not be assigned by either party without the written consent of the other party. Any assignment or attempted assignment of this Contract in violation of this paragraph shall be void.

25.    **Governing Law.** This Contract shall be interpreted and enforced in accordance with the laws of South Carolina.

26.    **Entire Contract.** This Contract contains the entire agreement of the parties. All changes, amendments, modifications, waivers, additions or deletions with respect to this Contract shall be in writing and signed by the parties.

27.    **Miscellaneous.** Titles to paragraphs are for convenience only and are not intended to limit or expand the covenants and obligations expressed thereunder. Any date specified in this Contract which is a Saturday, Sunday or legal holiday, shall be extended to the first regular business day after such date which is not a Saturday, Sunday, or legal holiday.

28.    **Memorandum of Contract.** Seller and Buyer agree, upon request by either of them, to enter into a short form or memorandum of this Contract, suitable for recording, the cost of preparation and the recording expense thereof to be the responsibility of the party requesting the same.

29.    **Disclosure and Notice.** Seller shall not disclose the terms of this Contract to any person except to its board of directors, its financial advisors and its attorneys, except in connection with and at the time of filing its notice and motion seeking Bankruptcy Court approval of the Contract, which notice and motion shall not be filed with the Bankruptcy Court earlier than February 1, 2005.

**[Signatures Appear on Following Page]**

- 9 -

**IN WITNESS WHEREOF,** the parties hereto have executed and sealed or caused to be executed and sealed this Contract as of the day and year set forth below.

<u>**BUYER:**</u>

RIVER BIRCH DEVELOPMENT, LLC, a North Carolina Limited Liability Company

By: _Hegh F. Beuuth Jh._ (SEAL)
    Manager

Date: _December 16, 2004_

<u>**SELLER:**</u>

SEA ISLAND COMPREHENSIVE HEALTH CARE CORPORATION, a South Carolina nonprofit corporation

By: _____ (SEAL)
Name: _McKinley Washington Jr._
Title: _Chairman_

Date: _1-7-05_

SEA ISLAND DEVELOPMENT FUND, Inc., a South Carolina nonprofit corporation

By: _Bernard G. Hadsden_ (SEAL)
Name: _Bernard J. Gadsden_
Title: _Chairman_

Date: _1/7/05_

- 10 -

MMMCharlotte #27589 v5

# **EXHIBIT A**

Description of Seller's Entire Tract of Land

## **EXHIBIT B-1**

**PUD Plan Annotated**
(To Identify Tracts 1, 2, 3, 4, 5, 6, 7, 8 And 9)



## <u>EXHIBIT B-2</u>

PUD Plan Annotated
(To Show Part Of Tract 1 To Be Conveyed To
Buyer, And Part of Tract 4 To Be Retained By Seller)

Exhibit B-2

A- Retained by Seller
B- Conveyed to Buyer